**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 20, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

KENNETH EUGENE HOGAN,

  Petitioner - Appellant,

v.

ANITA TRAMMELL, Interim
Warden,[*] Oklahoma State Penitentiary,

  Respondent - Appellee.

No. 11-6161
(D.C. No. 5:07-CV-00727-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[**]

Before **KELLY**, **TYMKOVICH**, and **MATHESON**, Circuit Judges.

Petitioner-Appellant Kenneth Eugene Hogan appeals from the district

court's denial of his habeas corpus petition. 28 U.S.C. § 2254. On appeal, he

argues that (1) he was deprived of his Sixth, Eighth, and Fourteenth Amendment

rights to have the jury consider heat of passion manslaughter as his defense and as

a lesser-included offense; (2) he was denied his right to have the jury fully

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Anita Trammel, who was appointed
Interim Warden of Oklahoma State Penitentiary on September 24, 2012, is
automatically substituted for Randall G. Workman as Respondent in this case.

[**] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

consider mitigation evidence; and (3) the failure to instruct the jury that his statement to law enforcement was exculpatory violated his right to Due Process and to present a defense. Exercising jurisdiction under 28 U.S.C. §§ 1291 & 2253(a), we affirm.

Background

This appeal arises from Mr. Hogan's second trial for the murder of Lisa Renee Stanley. In 1988, Mr. Hogan was convicted of first degree murder and sentenced to death. On habeas review, this court vacated Mr. Hogan's conviction, finding that his due process rights were violated by the trial court's refusal to instruct the jury on first degree manslaughter. Hogan v. Gibson, 197 F.3d 1297, 1312 (10th Cir. 1999). The facts of Ms. Stanley's murder are recounted in our earlier decision, and we need not repeat them here. See id. at 1300–02.

Mr. Hogan was re-tried and again convicted of first degree murder and sentenced to death. The Oklahoma Court of Criminal Appeals (OCCA) affirmed the conviction and sentence on direct appeal. Hogan v. State, 139 P.3d 907 (Okla. Crim. App. 2006). The OCCA denied two petitions for post-conviction relief. Hogan v. State, No. PCD-2003-668 (Okla. Crim. App. Mar. 21, 2007) (unpub.); Hogan v. State, No. PCD-2008-241 (Okla. Crim. App. Aug. 28, 2008) (unpub.); R. 210–15, 535–39. On May 12, 2011, the federal district court denied habeas relief. R. 752–848.

- 2 -

The district court granted a certificate of appealability (COA) on the first-stage jury instructions on first degree heat of passion manslaughter. R. 850–52. This court expanded the COA to include (1) the denial of mitigation evidence due to the state's proffered second-stage rebuttal evidence, and (2) the failure to give an exculpatory statement jury instruction. Case Management Order at 1 (10th Cir. Sept. 27, 2011). Still pending before this court is Mr. Hogan's motion to expand the COA to include a claim for ineffective assistance of counsel.

Discussion

We review the district court's legal analysis de novo. Welch v. Workman, 639 F.3d 980, 991 (10th Cir. 2011). Like the district court, we must defer to the state court proceedings unless the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). We presume the factual findings of the state court are correct unless the petitioner rebuts that presumption by "clear and convincing evidence." Id. § 2254(e)(1).

Our review of the record persuades us that the state courts' resolution of Mr. Hogan's claims was not "diametrically different" or "mutually opposed" to Supreme Court precedent. See id. § 2254(d)(1); Williams v. Taylor, 529 U.S.

- 3 -

362, 405–06, 412–13 (2000). Nor did the Oklahoma courts apply the Supreme Court's rules to materially indistinguishable facts and reach a different result. Williams, 529 U.S. at 406. Finally, no unreasonable determination of the facts pertinent to each claim occurred. See 28 U.S.C. § 2254(d)(2).

A.    First-Stage Jury Instructions on First Degree Heat of Passion Manslaughter

Mr. Hogan argues that the trial court's first-stage jury instructions restricted the jury from properly considering his heat of passion manslaughter defense. Aplt. Br. 13. He contends the trial court should have instructed the jury that (1) manslaughter was the defense; (2) the state was required to disprove heat of passion beyond a reasonable doubt; and (3) manslaughter may be considered at the same time as first degree murder. Id. Reviewing for plain error, the OCCA rejected this claim on the ground that the instructions, which were substantively the same as those given and upheld in Black v. State, 21 P.3d 1047 (Okla. Crim. App. 2001), informed the jury of Mr. Hogan's defense. Hogan, 139 P.3d at 922–25. The OCCA acknowledged that the instructions were slightly modified from those in Black, but found any error to be invited because the trial court gave the instructions that Mr. Hogan proposed. Id. at 925. The district court found the OCCA decision consistent with federal law, and that this court's decision in Bland v. Sirmons, 459 F.3d 999 (10th Cir. 2006), foreclosed relief. R. 765–66.

In arguing that habeas relief is warranted, Mr. Hogan points to Mullaney v. Wilbur, 421 U.S. 684 (1975), and our decision in United States v. Lofton, 776

- 4 -

F.2d 918 (10th Cir. 1985). Aplt. Br. 14–15. In <u>Lofton</u>, we interpreted <u>Mullaney</u> to require the following jury instructions when a defendant properly raises a heat of passion defense: (1) that manslaughter is the theory of defense; and (2) that the government must prove beyond a reasonable doubt the absence of heat of passion. 776 F.2d at 920. The problem with <u>Lofton</u> is that we cannot set aside a state court decision if it does not follow a circuit court ruling. <u>See</u> <u>Black v. Workman</u>, 682 F.3d 880, 901 (10th Cir. 2012) (rejecting a similar argument). Rather, the only ground for setting aside the OCCA decision would be if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Mr. Hogan, however, can find little relief in <u>Mullaney</u> because we have twice rejected the suggestion that a trial court's failure to instruct the jury as he requests warrants habeas relief. <u>See</u> <u>Black</u>, 682 F.3d at 902; <u>Bland</u>, 459 F.3d at 1013. Mr. Hogan urges us to disregard <u>Black</u> and <u>Bland</u> on the ground that these cases unreasonably interpreted the requirements for heat of passion manslaughter, <u>see</u> Aplt. Br. 23–26 & n.6, but we are bound by those decisions. <u>See</u> <u>United States v. Edward J.</u>, 224 F.3d 1216, 1220 (10th Cir. 2000).

Moreover, a review of the record persuades us that the jury was well aware of the State's burden—i.e., to prove the absence of any mental state other than deliberate intent. In Instructions 4 and 7, the trial court instructed the jury on the elements of first degree murder and first degree heat of passion manslaughter,

- 5 -

explaining that the State must "prove[] beyond a reasonable doubt each element of the crime." Trial R., Vol. IV at 735, 738. Instruction 5 defined "malice aforethought," the mental state of first degree murder, as "a deliberate intention to take away the life of a human being." Id. at 736. Instruction 10 explained that for heat of passion to constitute first degree manslaughter, the heat of passion "must have existed to such a degree as would naturally affect the ability to reason and render the mind incapable of cool reflection." Id. at 742. The OCCA found these instructions distinguished the mental states for first degree murder and heat of passion manslaughter such that it was clear "malice and heat of passion . . . cannot co-exist." Hogan, 139 P.3d at 924 (quotation omitted). The OCCA decision was logical and certainly was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

We also reject Mr. Hogan's argument that the jury was precluded from considering his defense because it was instructed to consider first degree murder before heat of passion manslaughter. The OCCA reasonably determined that "[a]ppellant was not deprived of having the jury consider his heat of passion defense in tandem with the murder charge." Hogan, 139 P.3d at 925 (quotation omitted). Instruction 6, for example, provides in part that "[t]he external circumstances surrounding this commission of a homicidal act may be considered in finding whether or not deliberate intent existed in the mind of the defendant to take a human life." Trial R., Vol. IV at 737. Moreover, as we recently explained

- 6 -

in Black, no Supreme Court precedent requires "an instruction stating that the jury may consider a manslaughter charge before reaching a verdict on first-degree murder." 682 F.3d at 902.

Finally, Mr. Hogan argues that the instructions prevented the jury from considering manslaughter as a lesser-included offense in violation of Beck v. Alabama, 447 U.S. 625 (1980). Aplt. Br. 26–30. The parties dispute whether this issue was raised below, see Aplee. Br. 23; Aplt. R. Br. 5–6, but assuming that it was, we reject Mr. Hogan's argument because Instruction 13 explicitly tells the jury to "consider the lesser included crime of Manslaughter in the First Degree" if it has "a reasonable doubt of the defendant's guilt of the charge of Murder in the First Degree with Malice Aforethought." Trial R., Vol. IV at 745.[1] Thus, the jury was not foreclosed from considering the lesser-included offense. And to the extent Mr. Hogan suggests that the trial court violated Beck because the first degree manslaughter instructions were flawed, we disagree as explained above. Thus, the OCCA decision was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

B.      Right to Present Mitigation Evidence

---

[1] Mr. Hogan proposed similar language. See Trial R., Vol. V at 814 ("If you have a reasonable doubt of the defendant's guilt of the charge of murder in the first degree, you must then consider the charge of manslaughter."); id. at 815 ("If you are unable to agree unanimously that Kenneth Hogan is guilty of the charged offense, you may proceed to consider a lesser included offense upon which evidence has been presented.").

Mr. Hogan next argues that he was denied the right to present mitigation evidence because (1) the trial court failed to rule in advance on the admissibility of potential rebuttal evidence; and (2) his counsel failed to recognize that the government's rebuttal evidence was inadmissible under the rules of evidence. We address each point in turn.

1.     Erroneous Trial Court Ruling

Mr. Hogan first challenges the trial court's evidentiary ruling. Aplt. Br. 38. Prior to the second-stage of Mr. Hogan's trial, the government informed the court that it wished to introduce new evidence about Mr. Hogan through his cousin, Kevin Freeman. Trial Tr., Vol. VIII at 136. The government agreed to hold this evidence for rebuttal purposes only, to which Mr. Hogan inquired about the type of character evidence that would open the door for the rebuttal evidence. Id. at 139, 145. The court refused to issue an advance ruling. Id. at 146. Mr. Hogan contends that this failure to advise precluded him from presenting a full mitigation case. Aplt. Br. 41.

The OCCA denied relief on Mr. Hogan's claim, finding that the trial court presented the defense "with a strategic decision" on whether to introduce mitigation evidence. Hogan, 139 P.3d at 931–32. The district court found the OCCA's determination reasonable, noting that (1) state evidentiary decisions do not present federal constitutional issues cognizable on habeas review; and (2) the absence of mitigation evidence did not render the trial unfair because of the

- 8 -

overwhelming evidence that the crime was heinous, atrocious or cruel. R. 769–70.

Under the Eighth and Fourteenth Amendments, in order to constitutionally impose a capital sentence, the sentencer may "not be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604 (1978). However, "[w]e may not provide habeas corpus relief on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (quotation omitted).

The OCCA decision that the trial court's evidentiary ruling merely presented defense counsel with a strategic decision on whether to introduce mitigation evidence and potentially open the door to rebuttal evidence is supported by the record. Moreover, no Supreme Court precedent requires an advisory ruling on potential evidence. Regardless, the failure to introduce this mitigation evidence did not render the trial fundamentally unfair—Mr. Hogan introduced much of the substance of the testimony from corrections officers and family members that he contends he would have introduced but for the trial court's ruling. See Trial Tr., Vol. IX at 86–87, 93–94, 95, 98, 100; Trial R., Vol. V at 831. Therefore, the OCCA decision was not contrary to, or an unreasonable

application of, clearly established Supreme Court precedent.

2.      Ineffective Assistance of Counsel

Mr. Hogan also argues that counsel was ineffective for not realizing that the character evidence the government sought to admit would be inadmissible. Aplt. Br. 47–48.  Mr. Hogan first raised this argument in his second application for post-conviction relief.  R. 536–37.  The OCCA denied the claim on the ground that it was procedurally barred under Okla. Stat. tit. 22, § 1089(D)(8).  Id.  The district court found Oklahoma's procedural bar adequate and independent, and concluded there was no cause and prejudice or fundamental miscarriage of justice to excuse the default.  R. 770–82.

In order to bar federal review, a state procedural rule must be adequate to support the judgment and independent from federal law.  A state procedural rule is adequate if it is "strictly or regularly followed and applied evenhandedly to all similar claims."  Banks v. Workman, 692 F.3d 1133, 1145 (10th Cir. 2012) (quotation omitted).  "A state procedural default is 'independent' if it relies on state law, rather than federal law."  Smith v. Workman, 550 F.3d 1258, 1274 (10th Cir. 2008) (citation omitted).  In arguing the procedural bar is inadequate, Mr. Hogan cites to a string of cases in which the OCCA irregularly applied its procedural bar.  See Aplt. Br. 54.  However, we recently considered the effect of these cases and concluded that Oklahoma's procedural bar remains adequate.  See Thacker v. Workman, 678 F.3d 820, 835–36 (10th Cir. 2012); Banks, 692 F.3d at

1145.  Our disposition is similar on the question of independence.  Mr. Hogan suggests the procedural bar is not independent because it "is intertwined with federal law."  Aplt. Br. 59.  Once again, we recently considered this argument and determined that Oklahoma's procedural bar is independent.  See Banks, 692 F.3d at 1145–47.  We thus reject Mr. Hogan's challenge.

We also find that Mr. Hogan cannot establish cause and prejudice to excuse his default.  Mr. Hogan asserts that the ineffectiveness of post-conviction counsel excuses his default.  Aplt. Br. 61–62.  He claims that Oklahoma has created a right to effective assistance of post-conviction counsel, and thus, Coleman v. Thompson, 501 U.S. 722, 752 (1991), in which the Supreme Court held that a habeas petitioner has no constitutional right to post-conviction counsel, does not apply.  Id.  Mr. Hogan instead looks to Martinez v. Ryan, 132 S. Ct. 1309, 1318 (2012), where the Court held that when state law prohibits a defendant from presenting a claim of ineffective assistance of trial counsel on direct appeal, post-conviction counsel's deficient performance in failing to assert the claim on collateral review can serve as cause for the default.  However, as we recently explained, Martinez is inapplicable when Oklahoma law permits a claim of ineffective assistance of trial counsel on direct appeal.  See Banks, 692 F.3d at 1148.  Therefore, we reject Mr. Hogan's claim that his default is excused.[2]

---

[2] For similar reasons, we deny Mr. Hogan's motion to expand the COA to include a separate claim for ineffective assistance of counsel.  The district court found this claim procedurally barred.  Where the district court dismisses a § 2254

C.    Jury Instruction on Exculpatory Statements

Mr. Hogan's final argument is that the trial court violated his right to Due

Process and to present a defense when it refused his requested jury instruction on

exculpatory statements.  Aplt. Br. 63–67; see Trial R., Vol. V at 808.  Mr. Hogan

contends that he was entitled to Oklahoma's exculpatory statement instruction

because his confession, which the government introduced at trial, was exculpatory

in nature.[3]  The OCCA rejected this claim on the merits, holding that (1) the

---

motion on procedural grounds, the movant must demonstrate that it is reasonably
debatable whether (1) the motion states a valid claim of the denial of a
constitutional right, and (2) the district court's procedural ruling is correct.  Slack
v. McDaniel, 529 U.S. 473, 484 (2000).  In light of Supreme Court precedent and
our decisions interpreting that precedent, Mr. Hogan has failed to demonstrate it
is reasonably debatable that the district court's procedural ruling is correct.

[3]  Oklahoma's exculpatory statement instruction provides:

An exculpatory statement is defined as a statement by the defendant
that tends to clear a defendant from alleged guilt, or a statement that
tends to justify or excuse his/her actions or presence.

Where the State introduces in connection with a confession or
admission of a defendant an exculpatory statement, which, if true,
would entitle him/her to an acquittal, he/she must be acquitted unless
such exculpatory statement has been disproved or shown to be false
by other evidence in the case.  The falsity of an exculpatory statement
may be shown by circumstantial as well as by direct evidence.

A statement is exculpatory within the meaning of this instruction only
if it concerns a tangible, affirmative, factual matter capable of
specific disproof.  A statement is not exculpatory within the meaning
of this instruction if it merely restates the defendant's contention of
innocence.

OUJI-CR 9-15.

- 12 -

instruction was not required because Mr. Hogan's statement was "disproved by other evidence in the case"; and (2) Mr. Hogan was not prejudiced because "the jury was fully instructed on the State's burden of proof, the presumption of innocence, and the voluntariness of his statement." Hogan, 139 P.3d at 926. The district court found the OCCA decision consistent with federal law. R. 803–04.

Mr. Hogan's claim is based in state law—whether he was entitled, under Oklahoma law, to an exculpatory statement jury instruction. However, habeas relief does not lie for errors in state law. Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010). We may only grant habeas relief if a state-law error "so infected the entire trial that the resulting conviction violates due process." Cummings v. Sirmons, 506 F.3d 1211, 1240 (10th Cir. 2007) (quoting Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Furthermore, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson, 431 U.S. at 155.

The OCCA held that Mr. Hogan suffered no prejudice from the court's failure to instruct the jury. This finding is supported by the record. Mr. Hogan was able to present his defense without this requested instruction—it was clear from the other instructions that he claimed to be acting in a heat of passion and was not guilty of first degree murder. That the jury chose to disbelieve his defense does not mean the instructions were flawed. Thus, the OCCA decision

- 13 -

was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

        AFFIRMED.

                                    Entered for the Court


                                    Paul J. Kelly, Jr.
                                    Circuit Judge